Memphis & Little Rock Railroad Co. (as reorganized) v Berry, et al.

erty. And just compensation means not merely the value of the land taken, but indemnity for the uses to which it is applied. *Mills on Eminent Domain, sec. 162.*

The fourth instruction for the respondent embodied the true rule. The jury are to consider all past, present and future damages which the construction of the road may reasonably produce.

The third instruction for the respondent—as to the measure of damages—is taken almost word for word from *1 Redf. on Railways, 3rd. Ed., p. 263.*

It is in substance the same rule that was announced by this court in *St. Louis, Ark. and Tex. R. R. v. Anderson, 39 Ark., 167.* It is the rule laid down in *Mills on Eminent Domain. sec. 166,* and in *Pierce on Railroads, p. 211.*

The jury were properly charged. And their verdict is not so extravagant as to indicate that it was given under the influence of passion or prejudice. It was their province to hamonize the testimony and to determine on which side the preponderance lay. And if in this they came to a wrong conclusion, it was the duty of the circuit court to set aside their finding on a motion for a new trial. But this court cannot undertake to average the testimony of witnesses where there is a conflict.

Judgment affirmed.

---

MEMPHIS & L. R. RAILWAY CO. AS REORGANIZED V. BERRY
ET AL.

1. TAXATION: *Exemption from in charter of corporation.*
   Exemption from taxation in the charter of a corporation amounts to a contract, and is protected by that clause of the federal constitution which forbids State laws impairing the obligation of contracts.

2. SAME: *Exemption from, not transferrable.*
   The provision in the charter of the Memphis and Little Rock Railroad

Company, authorizing the company to mortgage its charter and works, and exempting it from taxation, does not transfer the exemption to the purchasers under the mortgage. Exemption from taxation granted to a railroad corporation is not attached to the road and property and does not pass with it; but is a personal immunity and incapable of transfer without express statutory direction.

APPEAL from *Palaski* chancery court.

Hon. D. W. CARROLL, Chancellor.

*B. C. Brown* and *J. M. Rose,* for appellant.

By *sections 9 and 28 of the Act 1853, January 11,* the M. & L. R. R. Co. was given authority to mortgage its *charter,* and was exempted from taxation for twenty years from its completion. By the foreclosure and purchase, the purchasers became the owners of the original charter, and entitled to all the exemptions thereby granted, including exemption from taxation.

The answer admits all the material allegations of the bill. *Gantt's Dig., sec. 4,608.*

The exemption constitutes a contract between the State and the corporation, which cannot be impaired by subsequent legislation. *18 Wall, 351; 13 Ib., 264; 8 Ib., 430; 7 Cr., 164; 1 Black, 536; 20 Wall, 36; 4 Wheat., 518: 18 Wall, 206; 21 Ib., 497; 15 Ib., 460; 30 Ark., 677; Ib., 693; Ib., 128.* Nor can it be impaired by a constitutional provision. *13 Wall, 646; 25 Ark., 625.*

*Section 9, Act January 11, 1853, expressly* gives the company power to mortgage its *charter* and works, and the purchasers succeeded to all the rights and were entitled to all the exemptions of the old company, and had the right to organize by complying with the provisions of the charter. The grant of a power implies everything necessary to carry that power into effect. *Cooley Const. Lim., 64, 194, N. 1; 2 Cr. 358; 4 Wheat., 428; 25 Ark., 289, 299; 70 Ill., 634.* In granting the charter, all incidental powers

which are necessary    *    *    *    may be presumed to be
conferred by implication. *Morawetz on Corp.*, sec. *194;
2 Kent, 298; 18 B. Mon. (Ky.), 431; 10 N. J. Eq.,
352; 15 Conn., 475;* see also *Pierce on Railroads, 500;
11 Allen, 326, 334; 40 N. Y., 168; 27 N. H., 86,
94; 42 Md., 581; 62 Mo., 329.* The charter contains
an express power to mortgage the charter.    Is there any
rule of law which will make the power to mortgage the
charter void? Such mortgages are valid when made by
legislative consent. *Field on Corp.*, sec. *271; Phila. v.
W. U. Tel. Co., 11 Phila., Pa., 327; 22 Ohio St.,
411, 428; 10 Oh. St., 373-8; 14 Pet., 45, 48; 11
Allen, 65; 4 Met., 566; 10 Allen, 446, 455; 22 N. J.
Eq., 423; 9 Sm. & M., 394, 431; 4 Biss., 35, 42; 2
Redf. R. Cas., 621-3; 22 Oh. St., 428.*

The mortgage conveyed all the "franchises, rights priv-
ileges and immun ties," etc,    Exemption from taxation is
a privilege, an immunity and one that would pass by mort-
gage. *Humphrey v. Pegnes, 16 Wall, 244; 15 Wall,
460; 20 Ib., 36; 30 Ark., 677, 693, 701; 3 Fed. Rep.,
266, 280; 4 Zab., 555; 42 Conn., 103.*

The mere fact that general laws existed under which the
purchasers *might* have organized the new corporation, raises
no presumption that they actually *did* organize under such
acts.    The presumption is the other way, for when a party
has two courses before him, and has acted without indicating
which he has followed, the law presumes that he has taken
the course best for his own interest. The legislature gave
the company the power to mortgage its charter ; the act of
April 29, 1873, gave the right to the purchasers to *buy* the
*charter*, property, privileges and immunities.    The legisla-
ture had given the parties plain and explicit permission to
make the contract, and they had made it prior to the adop-
tion of the constitution of 1874, and the provisions of that
constitution could not impair its obligation.    As the mort-

Memphis & Little Rock Railroad Co. (as reorganized) v. Berry, et al.

gage conveyed the privileges and immunities of the old company, the appellant obtained the exemption by force of those terms. *Humphrey v. Pegues, 16 Wall, 244; Trask. v. Maguire, 18 Wall, 391.*

The case of *Morgan v. Louisiana, 93 U. S. Rep.*, does not apply, for there the mortgage only purported to convey the property and *franchises.* There was no *power* to mortgage the charter and no attempt to do so.

*C. B. Moore*, attorney general, and *U. M. & G. B. Rose* for appellees.

If any doubt should arise as to the existence of the exemption, it should be resolved in favor of the State. Exemption laws are to be strictly construed, and most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms. *97 U. S., 659, 666.*

The question as to the power to mortgage the charter is quite subordinate to the main consideration of the present company to receive it. A power to sell a thing, though given by statute, will not give power necessarily to buy it. Could a private person, or an infant or a married woman buy in and operate this great highway of commerce? The charter did not purport to create any ability in the purchaser to exercise corporate functions. It might have done so, and provided that the purchaser might organize a new company, and enjoy all the immunities of its predecessor; but it was not done, and courts cannot supply the missing link. No corporation has arisen or been called into being by mere implication. *92 U. S., 670.*

At the time of the organization of the present company there were two acts in force, under which the legality of the proceedings was undoubted—the act of April 29, 1873, and the general railroad law of 1868. Both of these statutes were enacted while the constitution of 1868 was in force.

The constitution contained the most stringent provisions against exemptions from taxation.—*Art. X, sec. 2; Art. V, sec. 48.* Section 1 of the Act of April 29, 1873, could not therefore exempt the corporation from the payment of any lawful tax.

The sale of the road and the organization of the present company took place in 1877, when the constitution of 1874 was in force. That constitution also contains stringent inhibitions of all special exemptions from taxation. *Art. XVI, secs. 5, 6, 7; Art. V, sec. 25; Art. XII, sec. 6.*

The appellant says that it has not complied with the provisions of either of these statutes; but this assertion of its own dereliction is unavailing. It claims to be a corporation organized at a certain time, under the laws then in force. Non-compliance with those laws cannot give any more or larger rights than could have secured by a strict compliance; and as long as it claims to be a corporation it is estopped from saying that it is not bound by laws which would apply to it as a corporation, created when it asserts that it was created. *Gaines v. Bank of Mississippi, 12 Ark., 769.*

The word "charter," as used in the act of 1853, means no more than the franchise to operate the road. "Franchises" and "charter" are often loosely used as being synonymous. *Morgan v. Louisiana, 93 U. S., 221.*

The exemption from taxation was a *personal* privilege or immunity granted to the old *Memphis & Little Rock Railroad Company*, and did not pass to the new company "as reorganized," dating from 1877. *Morgan v. Louisiana, supra; Louisville Railroad Company v. Palmes, Sup. Court Rep., 193; Trask v. McGuire, 18 Wall., 408; State v. Sherman, 22 Ohio St., 412.*

MARTIN, J. W., SPECIAL JUDGE. The appellant claiming to be exempt from the payment of taxes by virtue of the

Memphis & Little Rock Railroad Co. (as reorganized) v. Berry, et al.

exemption contained in the twenty-eighth section of the original charter, filed a bill to enjoin the appellees, railroad commissioners, from proceeding to enforce the collection of taxes as provided for in the act of 1883.   The court below having dismissed the bill, an appeal was taken to this court to correct the alleged error of the Pulaski chancery court in holding appellant liable for such taxes.

It is to be understood at the outset that there is no question made here now, as to the right of the original corporation, the Memphis & Little Rock Railroad Company, to be exempt from taxation according to section twenty-eight of its charter, enacted and accepted, and that company organized thereunder, many years before there was any constitutional inhibition on the legislative power to grant such exemptions. This was settled in *Oliver v. M. & L. R. R. R., 30 Ark., 129,* in accordance with the now established doctrine on this subject, that such an exemption in the charter of a corporation amounts to a contract and is within the protection of the clause of the constitution of the United States which forbids State laws impairing the obligations of a contract. *Pierce on Railroads and Citations.*

1.  TAXATION: Exemption from in charter, is contract

The establishment of this doctrine has not been accomplished, however, without a struggle and many earnest protests from courts and individual judges of the highest character.   Mr. Pierce, in his able work, says :   "The power of the State legislature, even outside of constitutional limitations, to bind the State by a grant of exemption from taxation, has been frequently contested or questioned as an unauthorized surrender of an essential attribute of sovereignty.  *Pierce on Railroads, 481; 35 Wis., 257; 30 Penn. St., 9; 64 N. C., 155; 27 Vt., 140; 62 Ills., 452.*

In *Atlantic and Gulf Railroad Company v. Allen, 15 Fla., 637,* JUDGE WESCOTT while recognizing the binding force of judicial authority, enters an earnest protest against

the doctrine, and does not hesitate to say, · if it were a new question, he would hold that this exercise of State sovereignty should not be bartered away.

And that eminent jurist, CH. J. REDFIELD, in *27 Vt.,* *143*, after conceding the doctrine to be established, as we have stated, says: "But it seems to me there is some ground to question the right of the legislature to extinguish by one act this essential right of sovereignty. I would not be surprised to find it brought into *general doubt*".

The exercise of the power is not favored by the courts. Sentiments similar to those quoted run through many of the decisions of the highest courts. And it is not impossible that the prophetic announcement made by the learned counsel for appellant in their very able brief, running in the same groove with JUDGE REDFIELD's suggestions, may yet be fullfilled. And it may prove true as asserted, "that except when directly authorized so to do by the constitution, no legislature ever did have power to grant an exemption from taxation, is a proposition to which every court in the union will come within twenty years."

At present, however, the precedents are the other way.

The claim of the appellant is that the exemption from taxation in *section 28* of the act of the incorporation of the original company, was by the terms of *section 9* of that act, made assignable, and by virtue of a subsequent mortgage and sale thereunder p assed to, and became vested in appellant company. The two sections are as follows:

"Section 9. The said company may at any time increase its capital to a sum sufficient to complete the said road, and stock it with anything necessary to give it full opera tion and effect, either by opening books for new stock, or by selling such new stock, or by borrowing money on the credit of the company, and on the mortgage of its CHARTER and works."

"Section 28. The capital stock of said company shall be

Memphis & Little Rock Railroad Co. (as reorganized) v. Berry et al.

·exempt from taxation until the road pays a dividend of six per cent., and the road, with all its fixtures and appurtenances, including workshops, warehouses and vehicles of transportation, shall be exempt from taxation for the period of twenty years from and after the completion of ·said road.''

The word ''charter'' as used in section nine must be taken to include at least the franchises of the old corporation in the sense of the right to own and to operate the road, take tolls and carry on its business. That this was made ·subject to mortgage, and sale is clear. That more than this was designed to be embraced in the transfer does not seem to be very patent.

Nor do we feel it can serve any very useful purpose to discuss that question at length here. In the view we take of it, and in the light of the adjudicated cases, there seems to be a more insurmountable difficulty encountered in finding in the appellant corporation the capacity to acquire and hold such a privilige, than in the old company to mortgage and sell. In order to sustain its case the appellant must establish both clearly.

Exemptions from taxation cannot be sustained upon doubtful implications. ''The power of taxation is essential to the support and existence of the government, and a grant to the company of exemption therefrom is not to be presumed, and when given to a certain extent is not to be *extended by construction.—Pierce on Railroads, 493*.

''A corporation is a creature of the law, deriving its existence and faculties from the express grant of the government. It has only the powers so conferred, and all others are presumed to have been withheld. That legislative grants to a corporation, whether of powers or exemptions, are to be strictly construed, so that nothing passes except what is given in clear and explicit terms, is a familiar doctrine which is applied with more stringency when the pow-

ers in question interfere with private rights or abridge important functions of government.''—*Pierce on Railroads,. 491.*

''The surrender of the taxing power is not to be pre-sumed unless the purpose of the State to part with it clearly appears. The power is essential to the existence of govern-ment and is of vital importance that it should remain unim-paired.'' A State cannot strip itself of this most essential power by doubtful words. It cannot by ambiguous lan-guage be deprived of this highest attribute of sovereignty.— *Erie Railway v. Pennsylvania, 21 Wall., 499.*

JUDGE FIELD in *Delaware Railroad Tax, 18 Wall., 225,* thus states the ' rule : ''All public grants are strictly construed. Nothing can be taken against the State by presumption or inference. The established rule of con-struction in such cases is, that rights, privileges and immu-nities, not expressly, granted, are reserved. There is no safety to the public interest in any other rule. And with special force does the principle, upon which the rule rests,. apply when the right, privilege or immunity claimed calls. for an abridgment of the powers of the government, or any restriction upon their exercise. The power of taxation is an attribute of sovereignty and is essential to every inde-pendent government. As this court has said, the whole community is interested in maintaining it undiminished and has a right to insist that its abandonment ought not to be presumed in a case in which a deliberate purpose of the State to abandon it does not appear. If the point were not already adjudged it would admit of grave consideration, whether the legislature of a State can surrender this power and. make its action in this respect binding upon its successors, any more than it can surrender its police power or its right of eminent domain. But the point being adjudged, the surren-der when claimed must be shown by clear, unambigous lan-guage, which will admit of no reasonable construction con--

sistent with the reservation of the power. If a doubt arise as to the intent of the legislature, that doubt must be solved in favor of the State."

In *Ohio Life Insurance Trust & Co. v. Debolt, 16 How. U. S., 435.* "The grant of privileges to a corporation are strictly construed against the corporation, and in favor of the public. Nothing passes but what is granted in clear and explicit terms, and neither the right of taxation, nor any other power of sovereignty which the community have an interest in preserving undiminished, will be held by the court to be surrendered unless the intention to surrender is manifested by words too plain to be mistaken."

*Hoge v. Railroad Co., 99 U. S., 355.* "The power of the legislature of a State to exempt particular property of individuals, or of corporations, from taxation, not merely during the period of its own existence, but so as to be beyond the control of the taxing powers of succeeding legislatures, has been asserted in several cases by this court, although against this doctrine there has been earnest protests by individual judges."

"But though this power has been recognized, it is accompanied with the qualificationth at the intention of the legislature to grant the immunity must be *clear beyond a reasonable doubt.* It cannot be inferred from ambiguous terms or uncertain phrases. The power of taxation is an attribute of sovereignty and is essential to every independent government. Stripped of this power it must perish. Whoever therefore claims its surrender must show it in language that will admit of no other reasonable construction."

But it is needless to multiply authorities on this point to show how far the courts have gone in emphasizing the restrictions and limitations thrown around this sort of grant. We add only from *Fertilizing Company v. Hyde Park, 97 U. S., 666.* "The rule of construction in this class of cases is that it shall be most strongly against the corpora-

tion. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms or by an implication equally clear. The affirmation must be shown. Silence is negative and doubt is fatal to the claim. The doctrine is vital to the public welfare." *20 Wall., 37; 22 Wall., 527; 76 N. Y., 64.*

Now, then, applying the rule laid down in these adjudications, do we find that there is clearly and unmistakably, without ambiguity or doubt, a grant of the exemption from taxation to the appellant company? The original company had it undoubtedly. Did or could this company take it by transfer from the old company?

2. Exemption from taxation not transferable. If it take by virtue of the general act of 1868, July 23, or of 1873, April 29, for incorporation in such cases, then without doubt the exemption could not pass, for the acts and the constitution of 1868, under which they were passed, as well as the constitution of 1874, all expressly and in the most emphatic terms forbade it. See *Const. 1868, Art. 10, sec. 2; Art. 5, sec. 48; Const. 1874, Art. 5, sec. 25; Art. 12, secs. 5, 6 and 7; Gantt's Dig., secs. ——.*

Did it yest in the appellant company by virtue of the act of 1853 and the mortgage and sale thereunder?

The late cases of *Morgan v. Louisiana, 93 U. S., 217,* and *Louisville & Nashville Railroad Company v. Palmes, 3 Sup. Ct. Reporter, 193,* settle conclusively by the adjudication of the highest judicial authority in the land, and the court of ultimate resort in this class of cases, that the exemption from taxation granted to a railroad corporation is not attached to the road and property, and does not pass with it, but that it is a personal immunity and "incapable of transfer without express statutory direction."

In the last case the supreme court of the United States use the following language : ''The conception of an immunity that is impressed upon the thing in respect to which it

is granted is purely metaphorical.   The grant is to a person in respect of a thing, and it is said to inhere in or be attached to the thing only, when *by its terms* the grant is assignable by a conveyance of the thing, and passes with the title to each successor."

In order to effect the transfer of the personal privilege of exemption from the old company to the new, the "statutory direction" upon which such claim is based must be tantamount to a *new grant* to the latter company, springing out of the law that provides for its creation and organization.

JUDGE GHOLSON in *Coe v. C, P. & I. R. R. Co., 10 Ohio St., 387*, states the doctrine thus, speaking of such corporations:   "Such an artificial being *only the law can create*, and when created it cannot transfer its own existence into another."   *   *   *   "The franchise to be a corporation is therefore not a subject of sale and transfer unless the law by some positive provision has made it so, and *pointed out the mode* in which such sale and transfer may be effected."

In *State of Ohio v. Sherman, 22 Ohio, 428*, CH. J. WELCH, in explaining what is meant by sale and transfer of the franchise to be a corporation, says:   "That a corporation can, when authorized by law so to do, transfer, sell or convey its charter or franchise to be a corporation and thus vest it in others, seems to be quite well settled.   I do not object to the proposition of law except it may be to the manner of stating it.   The real transaction in all such cases in legal effect is nothing more or less and nothing other than a surrender or abandonment of the old charter by the corporators, and the grant *de novo* of a similar character to the so-called transferees or purchasers.   To look upon it in any other light and to regard the transaction as a literal transfer or sale of the charter, is to be deceived, we think, by a mere figure or form of speech.   The *vital*

*part* of the transaction, and that without which it would be a nullity, is the *law under which* the transfer is made. The statute authorizing the transfer and declaring its effect is the granting of a *new charter* couched in few words, and to take effect upon condition of the surrender of the old charter, and the deed of transfer is only the evidence of the abandonment.''

Now, all we have in this case, from which such grant is inferrable on any theory, is that in the act of incorporation of the old company it is authorized to borrow money '' on the mortgage of its *charter* and works.''

The utmost that a sale in this case could be claimed to accomplish is to enable a *new corporation* to come into existence. Then there occurs a transfer from the old corporation to a new, distinct and independent corporation clothed with those rights and privileges which are transferrable from one to another. But the privilege of exemption from taxation, as we have seen, is one inhereing in the personality of the old corporation, and when that is destroyed the immunity goes with it. The two corporations could, at the most, only be claimed to be alike and not the same. '' *Similis est non idem.* ''

But the new corporation, the appellant here, cannot, without stretch of inference and an implication of the most extraordinary proportions, be supposed to exist by virtue of an organization under the old act of incorporation. It rests for its foundation on the one sole clause referred to, '' the mortgage of its charter and works.'' That this can be construed to provide for the organization of a corporation in the distant future, and to '' point out,'' in the language of the authorities, '' the mode and manner in which the sale and transfer is to be effected, '' seems impossible.

As is well said by the learned counsel of appellees, '' the charter in question says nothing about making a new corpo-

ration nor about organizing such a one, and gives no direc-
tions either as to time, manner or place. '' Indeed the
original act, on the very face of it, utterly negatives the
idea that it was ever intended for any such purpose as
organizing a successor to the corporate entity, the old com-
pany, which was then and thereby created. The directions
as to the organization under the act are all detailed and
specific as to the names even of the persons who were to
act as commissioners, the place where they were to meet
and the name of the corporation. The whole machinery
provided has reference, and sole reference, to the birth of the
corporate being then created.

And it must be borne in mind that if this claim of appel-
lant be well founded, then in the magic power of these few
words, may well be claimed authority for this corporation,
by the same right and the same process, to clothe a suc-
cessor to itself with all these rights, privileges and immu-
nities, and that to give rise to another, and so on *ad infin-
itum*. The argument, if good for this corporation, would
clothe it with all the powers of the first, among others that
of '' mortgaging its charter;'' that is, the old charter; and
thus providing, by another sale and purchase, for the evolu-
tion of its successor in like manner as this one is evolved
from the original company. Thus, by implication, providing
for an unlimited succession of independent and separate
corporations for all time to come.

The birth of each new corporation includes the exercise
of the sovereign power of the State; a power as we have
seen to be preserved '' undiminished and unimpaired'' for
the benefit of the community. Could such legislation be
sustained, even if it were clearly expressed in the act creating
the original company? It certainly cannot, by implication,
be impressed on a doubtful clause.

It is not devolved on the State in such a controversy to
explain why, when the original act was passed authorizing

a " mortgage, " there was a failure or refusal to provide at that time for all the processes by which it should ultimately be made most fully and effectually beneficial to the mortgagee. The original corporators, before they accepted it as their charter, would doubtless be careful to see that all provisions deemed needful or desirable should be inserted, so far as the legislature could be induced to accede to their demands. At all events the difficulty is there, and, as is held uniformly and again and again announced, in the most emphatic terms by the learned judges of the supreme court of the United States, in the opinions rendered there, as well as by the State tribunals, he who sets up a claim to exemption from taxation must prove it. And that not by vague, doubtful and speculative implications, but the grant and the scope and extent thereof, and the mode of its transfer, must be shown clearly and affirmatively. It would have been an easy matter for the legislature, if so intended, to have expressed in a few apt words or clauses the design to impress upon this charter, the character claimed, and provided for carrying out such design. Their failure to do this raises a presumption against it.

The appellant utterly fails to show how it was possible for it to organize under the old charter. The machinery was not provided, the mode not pointed out. The difficulty is one that cannot be removed by any amount of fine reasoning on the general principles of law and morals that ought to control States dealing with their citizens. It is a difficulty which counsel for appellant, in their very able, brief and forcible presentation of the case, have failed to overcome, simply because, as it seems to us, it cannot be done.

The present corporation, the appellant company, was organized in 1877. The only laws then in force under which it could be organized as a corporation, and to which the incorporation must be ascribed, prohibited the exemption from taxation.

Brown v. State.

"The prohibition which forbids the legislature from exempting property of railroad corporations from taxation makes it impossible for the legislature to create such a corporation capable in law of acquiring and holding property free from liability to taxation. *Louisville & Nashville R. Co. v. Palmes, supra.*

The appellant company was not entitled to exemption from taxation. The judgment and decree of the chancery court in dismissing the bill was correct and is affirmed.