# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

# STATE OF ARKANSAS,

AT THE

## NOVEMBER TERM, 1884.

[Continued from Volume 43.]

---

ARKANSAS MIDLAND R. R. CO. v. BERRY, GOVERNOR, ET AL.

1. TAXATION: *Exemption from, lost by transfer, etc.*
   Exemption from taxation granted to a railroad corporation is a personal privilege, incapable of transfer, and does not pass to the purchaser of the road under a mortgage.
2. SAME: *Exemption from, to railroad, lost by consolidation.*
   The exemption from taxation granted by charter to the Arkansas Midland Railroad Company, was lost by the subsequent consolidation of that company with the Little Rock and Helena Railroad Company, and forming the Central Railroad Company.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. M. T. SANDERS, Circuit Judge.

*Tappan & Hornor* for appellant.

*Oliver v. Memphis & Little Rock Railroad Company*, *30 Ark., 128*, fully settles the right of the plaintiff to the exemption claimed under section 2, act of January 20, 1855, unless it be shown to have been forfeited by a foreclosure sale. If the allegations of the first paragraph of the answer be true, the immunity from taxation is lost, as held in *Memphis & Little Rock Railroad Company v. Berry, 41 Ark., 436,* affirmed on error by United States Supreme Court. This then is purely a question of fact, to be determined from the testimony, and the *burden of proof* is on the appellees.

Review the evidence, and contend that the appellees have failed to prove by competent evidence that the Midland ever became the Central Railway Company, or ever executed the mortgage to the Union Trust Company, or that the rights, franchises, etc., of the Midland were ever sold under the foreclosure proceedings, or that it ever consolidated with the Little Rock and Helena Railroad Company, and became the Central, thereby losing its immunity from taxation.

*James P. Clark* for appellees.

If the matters alleged in the first paragraph of the answer are true, appellant lost its immunity from taxation. *Morgan v. Louisiana, 93 U. S., 221; R. Co. v. Palmes, 109 U. S., 244; M. & L. R. R. Co. v. Berry, 41 Ark.*

Reviews the testimony and claims that it shows, beyond controversy, that the Midland adopted the name of Central, and as such executed the mortgage, which was foreclosed, and the road sold, whereby the immunity from taxation was lost.

SMITH, J.   The appellant filed a bill in the Phillips Circuit Court, alleging an incorporation under an act of the

Arkansas Midland Railroad Company v. Berry, Governor, et al.

General Assembly, approved January 20, 1855, and claimed, under section 2 of said act, to be exempt from taxation until from its legitimate profits a dividend of ten per cent. on the amount of its capital stock was earned; that no such dividend, nor any profits which could properly be so applied, had been earned; that its property was assessed for taxation, and the proper officers were demanding said taxes, and would proceed in a summary way to collect the same, if not restrained. Pending a hearing, a restraining order was asked for, with a prayer that the same be made perpetual after a final hearing of the cause. An injunction was granted, and a bond executed by appellant.

In the first paragraph of the answer it was admitted to be true that by an act of the General Assembly, approved January 20, 1855, the Arkansas Midland Railroad Company was chartered, and that an organization under said charter had been effected, and that by section 2 of said act the property and capital stock of said railroad company was to be exempt from taxation until its legitimate profits would enable it to pay a dividend of ten per cent. on the capital stock thereof. But it was alleged that by the action of the board of directors on August 31, 1870, and of the stockholders on September 21, 1870, the name of the said Arkansas Midland Railroad Company was changed to that of the Arkansas Central Railway Company, and that thenceforth, under its adopted name, the said Arkansas Midland Railroad Company proceeded to carry out the purposes contemplated by its charter; that under said adopted name it applied for and collected large subscriptions made to its capital stock, under its original and true name; applied to the State for aid under the act supposed to authorize the same to be granted, and actually constructed the line of railroad now sought to be relieved from the taxes levied thereon; that by section 10 of said act, approved January 20, 1855,

the said Arkansas Midland Railroad Company was em-powered, through its president and directory, to borrow money for certain purposes, on the credit of said corpora-tion, and to secure any bonds issued for sums thus bor-rowed, a conveyance by mortgage or trust deed of "their" corporate franchises and property, was authorized; that on the first day of July, 1871, the power to mortgage, as aforesaid, was exercised by said Arkansas Midland Rail-road Company under its said adopted name; that on the eighteenth day of May, 1873, the power to incumber by mortgage was further exercised, in a manner and for a purpose fully set forth in the complaint; that said rail-road company made default in the performance of the conditions of said conveyances; that foreclosure proceed-ings followed, and a sale of the property and franchises of said company was made thereunder; that the present owners of said property and franchises are holders under the purchasers at said sale; that the immunity from taxa-tion was not acquired by virtue of the purchase at the foreclosure sale, and the same became extinguished thereby, and it was submitted that the assessment and levy were correct, and the complaint should be dismissed.

The second paragraph of the answer alleged a consolida-tion of the Arkansas Midland Railroad Company with the Little Rock and Helena Railroad Company in September, 1870.

The Circuit Court found the facts to be as follows: "That prior to 1870 there was effected a lawful organization under the charter of the Arkansas Midland Railroad Company granted by an act of the General Assembly of the State of Arkansas, approved January 20, 1855; that on the thirty-first day of August, 1870, the board of directors of said Arkansas Midland Railroad Company adopted a resolution declaring said Arkansas Midland Railroad Company to be

thereby consolidated with the Helena and Little Rock Railroad Company, and that said consolidated company be thereafter known as the Arkansas Central Railway Company; that this action of the directory was, on the twenty-first day of September, 1870, reported to a meeting of the stockholders of said Arkansas Midland Railroad Company, and the same was, to the extent of changing the name of said company to that of the Arkansas Central Railway Company, ratified and confirmed; that thereafter said Arkansas Midland Railroad Company carried on its business and was known as the Arkansas Central Railway Company; that under said name it applied for and received bonds in payment of subscription to the capital stock of the Arkansas Midland Railroad Company by the city of Helena, Phillips and Monroe counties, and aid from the State of Arkansas; that on the thirteenth day of April, 1871, its board of directors authorized the execution of a conveyance, by mortgage or trust deed, of its property and franchises to secure an issue of bonds to be made in furtherance of the construction of its line of railroad; that on July 3, 1871, the stipulations to be incorporated in the mortgage or trust deed were modified by the board of directors, and in accordance therewith on said third day of July, 1871, there was executed and delivered by said Arkansas Central Railway Company a mortgage or trust deed whereby was conveyed to the Union Trust Company, of New York, as trustee, all of the property and franchises of said railway company to secure said issue of bonds amounting to $1,200,000; that on April, 1873, another mortgage or trust deed was, by said Arkansas Central Railway Company, executed to the same trustee to secure an issue of bonds amounting to $480,000, alleged to be made in substitution of the same amount of the issue under the former mortgage; that default of the pay-

Arkansas Midland Railroad Company v. Berry, Governor, et al.

ment of interest on the bonds aforesaid having taken place in 1877, there was instituted in the United States District Court for the Eastern District of Arkansas, sitting at Helena with Circuit Court powers, a suit to foreclose the lien of said trust deeds ; that a decree of foreclosure was in due course entered, and a sale in pursuance thereof made by the Master of said court; that at said sale S. H. Hornor was the purchaser for the sum of forty thousand dollars, and by said purchase became the owner of all the property and franchises of the Arkansas Midland Railroad Company doing business and operating under the name of the Arkansas Central Railway Company; that said sale was confirmed by the court under whose decree it was made on August 9, 1877 ; that the plaintiff is the owner of the franchises and property of the Arkansas Midland Railroad Company under the purchase of said Hornor, at the foreclosure sale aforesaid."

1. TAXA-TION:
Exemption to railroad lost by transfer.

The bill was accordingly dismissed, and the correctness of that decree depends rather upon questions of fact than upon controverted propositions of law. If the old Midland Company, which owed its existence to a special charter, is in substance and legal contemplation the same corporation which executed the deed of trust to the Union Trust Company, and that deed has been foreclosed and the plaintiff occupies the position of a purchaser at the foreclosure sale, then the immunity from taxation is lost, upon the principle that it was a mere personal privilege and incapable of transfer. (*M. & L. R. R. Co. v. Berry, 41 Ark., 436,* affirmed on error, *112 U. S., 609; Morgan v. Louisiana, 93 U. S., 221.*) If, again, the Midland Company, to which the

2. SAME: Exemption lost by consolidation.

exemption was granted, subsequently became consolidated with another company, thus forming a new corporation, then the Midland Company is dead, and the exemption is

also extinguished.   *St. L., 1. M. & S. Ry. Co. v. Berry, 41 Ark., 509.*

On the twentieth day of January, 1855, the Legislature chartered the Arkansas Midland Railroad Company, for the purpose of constructing, operating and maintaining a railroad from the town of Helena to the city of Little Rock.   The second section of this charter enacts that the capital stock of the company, together with its rolling stock, fixtures and other property, both real and personal, shall be exempt from taxation until the company, from its legitimate profits, shall pay a dividend of ten per cent. on its capital stock.   An organization was effected under this charter, but nothing practically had been done towards the building of the road prior to the year 1870.   Meantime a rival corporation, the Little Rock and Helena Railroad Company, had been formed, under the railroad incorporation act of July 23, 1868, having the same termini and the same general direction.   At a meeting of the directors of the Midland Company, held August 31, 1870, it was resolved to consolidate with the Little Rock and Helena Company, and that the new company should be known as the Arkansas Central Railway Company.   The action of the directors, in changing the name of the corporation, was ratified and confirmed at a meeting of the stockholders on the twenty-first day of September, 1870.   Similar action was taken on the twentieth day of January, 1871, by the Little Rock and Helena Company, and its president was authorized to convey to the Arkansas Central all its rights, etc., and thereafter its existence as a separate company was to cease and determine.   After these steps had been taken subscriptions to the capital stock of the Midland were collected by the Arkansas Central.   On the third day of July, 1871, the Arkansas Central conveyed all of its property, and its chartered rights, privileges

and franchises, to the Union Trust Company, of New York, in trust, to secure a large issue of bonds. This deed of trust was foreclosed in 1877, by decree of the Federal Court; the road, with its rolling stock, fixtures and appurtenances, was sold to S. H. Hornor for $40,000; and the sale and conveyance by the Master in Chancery were approved. And the present plaintiff purchased the same property from S. H. Hornor.

Now, it is apparent that the plaintiff must take one of the two horns of the dilemma, on either of which it is impaled. If the proceedings of the directors and stockholders of the old Midland Company amounted merely to a change of name to that of the Arkansas Central, its corporate identity was not lost, and it was the company which, under an adopted name, executed the mortgage which was afterwards foreclosed. And although it may have been exempt from taxation until a certain condition of its circumstances existed, yet plainly, such an exemption would not pass to a purchaser of its property.

The same result would follow if there was a consolidation of the two companies. Both would then pass out of existence, and the new company would be liable to pay taxes, since the Constitution of 1868, then in force, subjects the property of all corporations to taxation the same as the property of individuals. *Article 5, section 48.*

*Lewis v. Clarendon, 5 Dillon, 329,* was an action on interest coupons cut from negotiable bonds issued by the town to the Arkansas Central Railway Company, in payment of a stock subscription. A recovery was resisted upon the ground of want of authority in the town to subscribe. There was no statute conferring such power, unless it was in the charter of the Midland. The testimony was the same, substantially, as in this record, and it was determined that the Midland and the Little Rock &

Helena Companies had been legally consolidated under the name of the Arkansas Central.

If S. H. Hornor had remained the owner of this road, it would never have been supposed that the property in his hands was free from taxation. It is preposterous to conclude that by conveying it to a corporation bearing the same name as that to which a special charter was once granted, he can revive an extinguished privilege. There is no magical potency in a name; none, at least, in a court of equity, which regards the substance of things and not mere shadows.

Affirmed.