BRYAN v. BLISS-COOK OAK CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 18, 1910.)

Nos. 3,069–3,073.

**1. DEEDS (§ 165*)—BREACH OF CONDITION—FORFEITURE.**
 A breach of a condition subsequent in a deed does not per se produce a reversion of the title.

 [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 521; Dec. Dig. § 165.*]

**2. DEEDS (§ 168*)—CONDITION SUBSEQUENT—FORFEITURE—RE-ENTRY.**
 Re-entry for condition broken is a proper method of effecting a forfeiture, not because necessary as a resumption of seisin and essential to a transfer of title, but as an unequivocal manifestation of the grantor's purpose to take charge on the breach of the condition subsequent; any other method possessing such characteristics being equally available.

 [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 529; Dec. Dig. § 168.*]

**3. RAILROADS (§ 72*)—CONDITION SUBSEQUENT—BREACH.**
 A deed for lands to a railroad company recited a consideration of specific amounts of the first-mortgage bonds and capital stock of the company and the building and completion of the railroad within three years. The habendum ended with a proviso that the railroad should be built and completed within three years, and the warranty clause concluded with the recital, "Subject only to the condition that, if said railroad be not built and completed within three years from date hereof, said lands shall revert to the estate" of the grantee. The railroad company not only failed to build the road, but was not instrumental in its construction. The road subsequently built was constructed by another company, not under a contract with the grantee, but in spite of it; the grantee's enterprise being no more than an attempt to build the road and finally abandoned. *Held* that, there having been various acts sufficient to terminate the railroad's conditional estate, it held no title to the land under the deed.

 [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.*]

Appeals from the Circuit Court of the United States for the Eastern District of Arkansas.

Actions by W. S. Bryan against the Bliss-Cook Oak Company and others, against Edwin S. Layman, and against William Bagnell, and by M. G. Ryder against the Bliss-Cook Oak Company and others, and by S. L. Moser against Edwin S. Layman. Decree for defendant in each case, and complainants appeal. Affirmed.

Julian Laughlin (J. W. Dickinson, George W. Murphy, Charles T. Coleman, and W. M. Lewis, on the briefs), for appellants.

John B. Jones, for appellees Bliss-Cook Oak Co. and others.

George B. Rose (U. M. Rose, W. E. Hemingway, Elmer H. Adams, D. H. Cantrell, and J. F. Loughborough, on the briefs), for appellees Layman and Bagnell.

Before HOOK and ADAMS, Circuit Judges, and McPHERSON, District Judge.

HOOK, Circuit Judge. These were suits to quiet title to lands in Arkansas. The defendants prevailed in the trial court, and complainants appealed.

The common source of title was Edmond McGehee, who died testate in 1865. The complainants claim under a deed made in 1873 by the executors of his will to the St. Louis & Memphis Railroad Company. The defendants claim under a deed in 1881 from his devisees to Horace R. Allen. The case turns upon the effect of the deed to the railroad company and the question whether the estate conveyed by it was terminated. The same or a like deed was before us in Rannels v. Rowe, 74 C. C. A. 376, 145 Fed. 296, which was, however, a case between other claimants and involved other lands. The deed recites a consideration of specified amounts of first mortgage bonds and capital stock of the company and "the building and completion of said railroad in three years from date hereof." The habendum clause ends with a proviso that the railroad shall be built and completed within the three years after date, and the warranty clause concludes with the following:

"Subject only to the condition that if said railroad be not built and completed within three years from date hereof said lands shall revert to the estate of Edmond McGehee, deceased."

It was held in Rannels v. Rowe that the estate conveyed to the railroad company was upon condition subsequent. It appeared from the evidence in that case that, while the railroad was not built within the limited period, earnest efforts were made and a large amount of money expended, and that finally, through a contract between the St. Louis & Memphis Company and another railroad company, the latter built a railroad in 1889 substantially on the line of the original survey, and utilized the roadbed and works of the former. It also appeared that during this period nothing was done to take advantage of the breach of the condition subsequent, save the execution and recording of the deed from McGehee's devisees to Allen. It did not appear that the railroad company, the grantee in the deed of 1873, knew of the subsequent conveyance; but it was affirmatively shown that it went ahead and caused the railroad to be built, although after the time limited. Under the law of Arkansas it was not charged with notice of a deed given and recorded after its own was put upon the records. Birnie v. Main, 29 Ark. 591, 595. Under these circumstances we also held in Rannels v. Rowe that the condition had been performed before the right of forfeiture was effectively asserted, and the grantees of the St. Louis & Memphis Company were entitled to hold the property. The breach of the condition subsequent did not per se produce a reversion of the title. Not only was an affirmative act evincing a purpose to forfeit necessary, but the grantee should have been actually advised of it before fulfillment of the condition, or the act should have been of such a character as under the law affected it with notice. We have no disposition to question the soundness of the conclusions in that case, nor would it be profitable to explore the old learning respecting feudal tenures, livery of seisin, and the like, much of which has been discarded as unsuitable to American institutions. The ancient history of re-entry and its functions is quite beside the question. Re-entry for

condition broken is still a proper method of effecting a forfeiture, not because it is necessary as a resumption of seisin and essential to a transfer of title, but because it is an open and unequivocal manifestation of the purpose of the grantor to take advantage of the breach of the condition subsequent. Any other method possessing those characteristics would suffice.

The complainants rely strongly upon Rannels v. Rowe. But the evidence in the cases at bar is radically different in important respects. It appears here beyond question that the St. Louis & Memphis Company not only failed to build the railroad itself, but was not instrumental in its construction. The railroad that was finally built was not built under or pursuant to a contract with that company, but in fact despite it. The closest connection it had with the later enterprise consisted of unsuccessful efforts to make a contract for the use of its surveys and work, and, failing in that, to obtain compensation for an actual use of them which it asserted was made, but which the new company denied. It is even doubtful that it ever issued and delivered the mortgage bonds and stock recited as part of the consideration for the deed from McGehee's executors. The St. Louis & Memphis enterprise was not much more than an attempt, doubtless in good faith, which was abandoned as a failure through stress of circumstances; and the condition subsequent was never performed by that company or by its procurement. Moreover, it appears there were various acts sufficient under the circumstances to terminate the estate upon condition.

The decrees are affirmed.

NOTE.—The following is the opinion of Trieber, District Judge, filed in the court below:

TRIEBER, District Judge. There are several questions of law involved in these cases, which have been, so far as this court is concerned, conclusively settled by the Circuit Court of Appeals in Rannels v. Rowe, 74 C. C. A. 376, 145 Fed. 296. Whether that court erred, as is urged by counsel for defendants, in some of its conclusions, is not for this court to say. Unless the Supreme Court of the United States, in a later decision, holds squarely the other way, or the Court of Appeals overrules these conclusions of law, they are conclusive on this court. That case has conclusively settled, first, that the conditions in the deeds in these cases are conditions subsequent, and not conditions precedent; second, that deeds of executors without authority from a court of competent jurisdiction, there being no power under the will to convey, are void, and do not affect the devisees or heirs; third, the conveyance to the defendants by the devisees and heirs at law of Edward McGehee, without notice to the railroad company or its grantees, was not equivalent to a re-entry or notice of forfeiture for breach of the conditions subsequent; fourth, that the joinder of the widow in the deed to the railroad company as one of the executors, without lawful authority, was a conveyance of her undivided one-half interest in the lands devised to her by the testator.

On behalf of the plaintiffs it is claimed that the executors were authorized by the probate court of the state of Mississippi to make this conveyance. In view of the fact that the lands were situated in Arkansas, and that the law is well settled that while courts of chancery, acting as such, or, where there may be authority granted, the probate court, may act upon the persons, having jurisdiction of them, and compel them to make a conveyance, which would convey the title, it cannot be done, in the absence of such a law, so as to affect the title to lands in another state. Only the courts of the state in which the lands lie can authorize their sale or conveyance. Boyce's

Ex'rs v. Grundy, 9 Pet. 275, 9 L. Ed. 127; Miss. M. R. R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311; Northern Indiana R. R. Co. v. Michigan Central R. R. Co., 15 How. 233, 14 L. Ed. 674; Carpenter v. Strange, 141 U. S. 87, 105, 11 Sup. Ct. 960, 35 L. Ed. 640. The Supreme Court of this state has gone so far as to hold that although, by statute of this state, administrators and executors appointed by courts of foreign states may maintain actions to recover assets belonging to the estate, although real estate is not expressly excluded by the statute, still they cannot maintain an action for recovery of real estate, and that the statute applies only to personalty. Fairchild v. Hagel, 54 Ark. 61, 14 S. W. 1102. For this reason, assuming that the probate court of the state of Mississippi did authorize a conveyance, it would not affect the title to lands in Arkansas, as it could not grant such authority, so as to divest the devisees or heirs of McGehee of the title.

It is also claimed on the part of the defendants that Mrs. McGehee elected to take dower, and not under the will, and that for that reason her conveyance did not convey title to the one-half which was devised to her by the will; but as the evidence fails to show that such election was made within the time prescribed by the statutes of Arkansas, and in the courts of the state of Arkansas, the provisions of the will do apply and convey title to her. Apperson v. Bolton, 29 Ark. 418; Pumphry v. Pumphry, 52 Ark. 193, 12 S. W. 390. It is also claimed on the part of the plaintiffs that in view of the fact that the estate was insolvent, and so declared by the courts of the state of Mississippi, the lands would be subject to the payment of debts, and would be assets in the hands of the executors, and that, being authorized by the probate court of Mississippi to sell them for the payment of debts, the title would pass; but the court cannot sustain this contention. The Mississippi court had no right to authorize a sale, as before stated, conceding that the estate was insolvent. It is the well-settled law of Arkansas that, unless the administrators or executors or creditors of the estate procure a sale to be made within seven years from the time the will is probated or the administrator is appointed, the statute of limitations bars any further action, and the title of the heirs or devisees becomes perfect. All these questions of law are well settled, and I presume counsel are familiar with the decisions of the courts, and for this reason they need not be cited extensively. Mays v. Rogers, 37 Ark. 155; Roth v. Holland, 56 Ark. 633, 20 S. W. 521, 35 Am. St. Rep. 126.

Both parties in the Layman Cases claim that they were in possession. Moser claims to have taken possession in 1903 of a small tract of land, a 40-acre tract, and built a little shanty on it, and lived there; and he claims that by taking possession of that tract, and building a little house on it, doing nothing else showing an exercise of acts of ownership, except to tell people and post notices of claim of title, put him in possession of the entire 24,000 acres. Such possession was not sufficient to cover the entire 24,000 acres; but, aside from that fact, it is immaterial who was in possession, because it was not for seven years, so as to vest title in him or those whom he represented under the statute of limitations. The only difference it would make would be whether he could maintain this action in equity. That is immaterial, if neither party is in possession. Under our statutes an action to quiet title may be maintained in a court of equity without possession by the plaintiffs, if the lands are wild and unoccupied, as the court finds these lands were. The defendant's possession of the Boston farm by its grantors was not possession of the other lands. It was held under different conveyances. It was not contiguous to those lands; there being a strip of two sections between that farm and the lands in controversy. These two sections between this property and the Boston farm, as well as the lands in controversy in the Layman Cases, were mortgaged by the Desha Land & Timber Company in one deed; and it is claimed that possession of one tract under that deed by defendant is possession of all. I do not think that the evidence justifies a finding that possession of the defendants and their grantors was such as to invest them with title to all of the lands under the statute of limitations.

As to the building of the railroad, or the extension of it, while no doubt it was under claim of title, yet it only covered a small part, and they abandoned it afterwards before it had ripened into a title by adverse possession. The

possession was so desultory that the court is unable to find that they had open, notorious, and continuous possession for more than seven years of all these lands. Nor does the court find that its possession is such, in view of the peculiar facts in this case and the large acreage of lands involved, that a court of equity is without jurisdiction to maintain a suit to quiet title such as was instituted by the plaintiffs in these actions.

The next claim made by the defendants is that they paid taxes for more than seven years prior to the institution of this suit, claiming they owned the lands under color of title, and for more than three years after the passage of the act of 1899 (Acts 1899, p. 117), and that these acts invested them with a good title. Now, if that were all there is in the case, the court would so hold; the proofs showing conclusively that the defendants paid taxes for more than seven years continuously and for more than three years after the passage of the act except as to those tracts of land which were forfeited for the nonpayment of taxes, and were sold, although redeemed before a year had expired. Towson v. Denson, 74 Ark. 302, 86 S. W. 661; Lumber Company v. Hardin, 78 Ark. 95, 92 S. W. 1118, affirmed 207 U. S. 580, 28 Sup. Ct. 258, 52 L. Ed. 350. As to the tracts sold for taxes, the court holds, in view of what was decided by the Supreme Court in Wyse v. Johnson, 83 Ark. 520, 104 S. W. 204, in construing this act of 1899, that the act requires the continuous payment of taxes for a full period, and the sale for nonpayment of the taxes for one year broke this continuity, and as to these tracts defendants' claim under the act of 1899 cannot be maintained. But as to the other lands, defendants' claim of title became perfect under the act of 1899.

Plaintiffs claim that under the provisions of the acts of the General Assembly of 1869 (Acts 1869, p. 130) and 1873 (Acts 1873, p. 172), these lands were exempt from taxes, and for that reason they were under no duty to pay the taxes, and payment of the taxes by the defendants, if the lands belonged to the railroad company, could not affect them. The question of laches is also set up by the defendants, and as the claim of exemption from taxes is set up as a defense by plaintiffs to that plea, it may for that reason be disposed of with the other. The court is clearly of the opinion that under Const. 1868, art. 10, § 2, and article 5, § 48, the Legislature had no power to exempt these lands from taxation, and that the exemption was an absolute nullity. M. & L. R. R. v. Berry, 41 Ark. 436, affirmed in 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 837; Fletcher v. Oliver, 25 Ark. 289; Ark. Mid. R. R. v. Berry, 44 Ark. 17.

But, even if the Legislature had the power to do it and the acts were constitutional, it would not help plaintiffs. The conveyances were made under the act of April 21, 1873. That act provided that, in order to entitle the railroad company to the claim of exemption from taxation, the deed, not as is stated in the bill of plaintiffs, had to be merely executed and delivered on or before July 15, 1873, but in addition to that had to be filed for record in the county in which the lands were lying on or before July 15, 1873. The undisputed evidence is that the deeds were not filed for record until October 23, 1873, and for that reason the exemption would not attach. In addition to that, that act also provided that the exemption from taxation should be void unless the railroad company, to whom the lands were conveyed, built at least 100 consecutive miles within three years. There is no evidence that that was done. The court holds that provision to be self-executing. So, assuming that the act of the Legislature was not in conflict with the Constitution, yet not having filed the deed for record by July 15th, and the evidence conclusively showing that the railroad was not built within three years thereafter by this company, or any other company connected with them or acting under or by their permission, the exemption from taxation, if it ever existed, ceased on July 15, 1876. Whether the Constitution of 1874, which provided that all charters granted heretofore, and on which parties have not acted, shall be forfeited, is self-executing or not, it is unnecessary to determine, in view of the conclusions reached by the court. But see Jones v. Jarman, 34 Ark. 323.

This brings us to the question of laches. The Court of Appeals in Rannels v. Rowe has decided that upon the facts in that case it was not shown that the parties were guilty of such acts as would constitute laches within the meaning of the law. But in this case the proof is quite different. It shows

here that at the time these lands were conveyed they were practically worthless; that their value was from 15 to 25 cents an acre at the utmost; that the timber at that time was not considered of any value, but detrimental; and that in clearing lands no one thought of saving the timber, but the lands were always cleared by simply deadening the trees and letting them die. It is further shown that since that time these lands have risen greatly in value; that at the time these suits were instituted they were not worth less than $10 an acre, and according to the evidence some were worth at that time $25 an acre. Defendants in the meantime expended large sums of money for taxes and redemptions, under the belief that they were the true owners of the lands; complainants making no claim thereto. Now it is contended by plaintiffs that, even if it be conceded that the act was unconstitutional, yet the parties believed that it was constitutional, and for that reason did not pay any taxes. Conceding that they simply acted under a misapprehension of the law, is that a good defense? It is true that it is a general rule that a person, in order to be held guilty of laches, must act with full knowledge of the facts. Conceding all that to be true, there is a conclusive presumption of law that every one knows the law, and if an act is unconstitutional that he knows it. It may be a violent presumption for courts to indulge in, yet it is held that, even where a person in good faith acts under an unconstitutional law, he may be guilty of a trespass and liable for damages.

But there is another reason why these plaintiffs are shown to be guilty of laches. Assuming the act to be constitutional, the act provides that these lands shall only be exempt from taxation as long as they are in the hands of the railroad company. The court finds as facts that the conveyance to Mullen was such a conveyance as would subject the land to taxation; but, even conceding that the contention of the plaintiffs is correct that Mullen's holding the title was simply as a naked trustee for the benefit of the railroad company, yet the evidence shows he had made conveyances more than 10 years before the institution of these suits, and yet, during all that time after these conveyances were made, no effort was made by these parties to pay the taxes at any time, nor did they pay any. Not even after Moser went on the lands under claim of title for plaintiffs did they offer to pay the taxes once. Even if the failure to pay taxes was for less than seven years, it would be immaterial in view of the facts in this case. Courts of equity are not conclusively bound by statutes of limitation in matters of laches. Usually they follow the statute of limitations; but there may be instances when parties have been guilty of laches when they failed to act for a much shorter time than that prescribed by the statute of limitations, while in other cases they may not be guilty of laches although they delayed for a longer period of time. Patterson v. Hewitt, 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed. 214; Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232; Williams v. Rhodes, 81 Ill. 571. So, in this case, the court is clearly of the opinion that they have been guilty of such laches as to prevent them from obtaining any relief in a court of equity. Turner v. Burke, 81 Ark. 352, 99 S. W. 76; Improvement Co. v. Chatfield, 81 Ark. 296, 99 S. W. 84.

The court also finds as facts that the money expended in building what is called the Jonesboro Narrow-Gauge road, although some of the directors of the Memphis & St. Louis road were also interested in that road, was for a separate and distinct corporation, and the building of one had nothing to do with the other. The court also finds, in view of the testimony of Newman Erb, that the building of the Nettleton road, or the Memphis & Kansas City, or Springfield & Memphis road, as that road is usually called, had nothing to do with this road, the St. Louis & Memphis Company; that it was independent, and in fact adverse to it, and not in recognition of its title.

Another thing which I think should be mentioned is that the act of 1873 only exempts such lands from taxation which are donated to railroad companies, or which are conveyed to them in payment of a stock subscription. It is well settled that all exemptions from taxes will be strictly construed, and always in favor of the people as against the parties to be benefited, and unless the statutes are strictly complied with there will be no exemption. The deeds in this case show it was not a donation, nor was the sole consideration

a subscription of stock; but there were other considerations, the payment of first mortgage bonds for a very large amount. The court finds as a matter of fact, that there never was any stock issued or delivered to these people. Nor were there any mortgage bonds issued or delivered. In fact, the proof shows that no bonds or mortgage were ever executed by that railroad. But so far as the conveyance is concerned, as the deed recites a consideration, that fact would not be sufficient to defeat the conveyance. The settled rule of law is that, if there is a recital of consideration, it is permissible to show that the consideration was not paid, although it is recited in the deed that it was paid; but the law will not permit evidence to be introduced showing that there was in fact no consideration at all, for the purpose of defeating the conveyance, unless there is fraud, or some mistake, or other reason for which courts of equity will grant relief.

There is one other question to be determined. It is claimed by plaintiffs that they are tenants in common with defendants as grantees of Mrs. Mc-Gehee's interest, and that the redemption of the lands from the state by the defendants, or their grantors, and the payment of the taxes, must inure to the benefit of the tenant in common, and for that reason the plaintiffs are entitled to a decree for one-half of the lands, subject to repayment of one-half of the taxes which have been paid by the parties. It is a general rule that one tenant in common cannot, by the payment of taxes, deprive the other tenant in common of his interest. But, in order to do that, the tenant in common must be one whose title is recognized, or not disputed. In this case the evidence conclusively shows that none of the defendants ever recognized that the plaintiffs, or either of them, were tenants in common. Everything they did indicated that they claimed to own the entire interest in these lands absolutely and adversely to any such claim as is now set up by the plaintiffs that they were tenants in common. If they had recognized them as tenants in common, it would have been an easy matter to redeem their undivided half from the tax forfeitures and sales. They could have paid the taxes every year on their undivided half, and permitted the other half to be sold for non-payment of taxes. That would have indicated a recognition of plaintiff's title. But all of the defendants' and their grantors' acts have been such as to show conclusively that, so far as they were concerned, their claim was the ownership of the entire interest in these lands, and adverse to any and all claims which may be made by those claiming under the deeds of McGehee's executors or any other title. Under such circumstances the statute of limitations is set in motion. Brown v. Bocquin, 57 Ark. 97, 20 S. W. 813.

In view of those facts, the decree will be that plaintiffs' bills be dismissed for want of equity, and the court will grant the relief asked in the cross-bills to quiet the title of the defendants in the original bills and plaintiffs in the cross-bills against the defendants in the cross-bill.