Jones, Ad'r, et al. v. Green, Ad'r, &c.

The judgment must be reversed, and the cause remanded for a new trial.

JONES, AD'R, ET AL V. GREEN, AD'R, &C.

1. CONVEYANCES: *Vendor without title: After-acquired title.*
   The statute, Gantt's Digest. section 832, providing that when any person should convey any real estate to which he had no title, a title afterwards acquired by him should immediately vest in his vendee, applied to conveyances made by corporations as well as individuals.
2. CONVEYANCES: *Recording powers.*
   Powers by which deeds are made must be recorded, or the record of the deed will not be notice to a subsequent purchaser from the party executing the power.

APPEAL from *Hempstead* Circuit Court.
Hon. J. K. YOUNG, Circuit Judge.

*J. M. Moore* for appellants.

On the second declaration of law prayed by defendant, see *22 Ark., 136*; *9 Id., 112.*

On the 3d: The act of congress makes an express limitation upon the disposal of the lands, (see act, Gantt's Digest),and the act of the legislature granting the lands to the C. & F. R. R., is subject to all the conditions nnd limita tions contained in the act of congress. *Acts 1856, p. 4; Acts Cong., July 28, 1866, and Resolutions of Cong., M'ch 3, 1869 and May 9, 1870 in Gantt's Dig., and 1 Black. U. S., 502.*

On the 4th, 5th and 6th declarations: The 8th clause of the deed of trust to Wilson, Brayman & Moore provides the manner of filling vacancies. Neither the executive committee nor the directors could declare vacancies. The trustees represented the interest of creditors as well as the company, and neither could revoke their power and author-

ity. As to their powers being revoked by being *alien ene-mies.* See *1 Otto U. S., S. C., Matthews v. McSlea.* The president's proclamation was not issued until Aug. 16, 1861, and the action of the executive committee was had July 26, 1861. At that date there could have been no va-cancy.

*B. B. Battle* for appellee.

The act of the directory was the act of the corporation. *Acts 1853, p. 179, secs. 5 and 7; Pierce on Railroads, 24, 27; 2 Redf. on Railways, p. 136, sec. 182, p. 583, sec. 135; 24 N. Y., 196, 213; 43, Id., 123–6; 2 Met., 163.* The company had the right to remove the trustees and appoint others. *1 Perry on Trusts, section 285.*

The sale and conveyance to Andrews being complete and executed will be recognized and enforced, although the transaction may have involved an unauthorized ex-ercise of corporate power on the part of the company. *Morawitz on Private Corporations, secs. 116, 120; 12 Wall., 358; 37 Cal., 544; 83 Ill., 136; 7 Wall., 392.*

The C. & F. R. R., having by its conduct and acts in-duced Andrews to purchase the land and take possession, is estopped from disputing his title. *37 Ark., 47; 36 Id., 114; 33 Id., 468,* and could not place those claiming un-der it in any better condition. Andrews' deed being of record, all subsequent purchasers were charged with no-tice.

The deed to Andrews purported to convey the land in fee, and the land passed in fee simple when the company acquired the fee. *Gantt's Dig , sec. 832; Bigelow on Estoppel, p. 322.*

EAKIN, J. This is an action of ejectment, begun by the administratrix of W. W. Andrews against William Nor-man to recover the N. E. quarter of section eight, in town-

ship twelve, south of range twenty-three west; a tract of land which was included in the grant of lands from the United States, made to the state of Arkansas on the ninth of February, 1853, to aid in the construction of a railroad from the Mississippi river, opposite the mouth of the Ohio, by way of Little Rock to the Texas boundary near Fulton. The conditions of said grant were not complied with, and the lands by the terms of it would have reverted to the United States, but for an additional act of July 28th, 1866, by which the former act was revived and extended for a period of ten years in which the road was completed.

For detailed provisions of these acts, see acts of congress of the respective years and *pp. 142 and 143, Gantt's Digest.* The lands were to be applied solely to the construction of the road and "to no other purpose whatsoever." They were to be sold only as the work progressed, in quantities not to exceed one hundred and twenty sections of land in the beginning, contiguous to some continuous section of twenty miles of road, and so on for each continuous twenty-mile section until all be completed. It was provided that the lands granted should be subject to the disposal of the State legislature for the purposes aforesaid and no other.

By acts of sixteenth of January, 1855, and twenty-sixth November, 1856, these lands were granted by the State to the Cairo & Fulton Railroad Company, which had been chartered by the State and had established its line along the route indicated by congress, subject to al. the limitations and provisions of the original donating act.

On the first day of November, 1859, said company, contemplating the issue of five million dollars in bonds, conveyed all the said lands in trust to Brayman, Moore and Wilson. The provisions of the deed were long and minute in detail. It is sufficient to say that the general purpose of it was to authorize a sale of the lands to take up the bonds,

or provide a fund for their redemption. No regard was paid to the congressional restriction as to the twenty mile sections. The bonds, in blank, it seems were put in the hands of Brayman for negotiation.

Before any action was taken under the trust deed, the civil war became flagrant. The executive committee of the railroad, at Little Rock, on the twenty-sixth of July, 1861, determined that the bonds in the hands of Brayman ought not to be issued, and should not be, under any pretence, until further orders of the directory; and it was made the duty of the president of the road to reclaim them from Brayman. It was further determined that said trustees were no longer competent to act as such, being citizens of Illinois, a foreign government at war with this; and that their offices had become vacant. Three other trustees, Ashley, Wait and Woodruff, were appointed in their stead to hold and protect the property with all the authorities, powers and rights conferred upon the original ones. They were further empowered, for the purpose of paying expenses of the trust, and the just debts and liabilities incurred by the company to sell lands to a limited extent, not to exceed one hundred thousand dollars, without further order of the directory; and to execute deeds to the purchasers.

This action of the executive committee was approved and confirmed by the directory on the eleventh of November, 1861. Neither the trust deed, nor this action of the directory substituting new trustees, was ever recorded in Hempstead county, where the particular tract now in controversy lies.

On the sixteenth of December, 1861, the new trustees, Ashley, Wait and Woodruff, sold and conveyed the particular tract in controversy, with other lands, to Wm. W. Andrews for the sum of nine hundred dollars. They recite that it was done "by virtue of a deed of trust executed by the said Cairo & Fulton Railroad Company in Arkansas, on

the first day of November, 1859; and the resolution and order of the executive committee of said company on the twenty-sixth day of July, 1861.'' They undertake to convey only such rights as were granted to, and vested in, the company. This deed was duly recorded, and upon it the plaintiff below rests.

On the tenth day of December, 1870, the Cairo and Fulton Railroad Company entered into indentures with the Union Trust Company of New York. The instrument refers to the different acts and resolutions of congress by which the land grant had been made and extended, and recites that the railroad company intended to issue bonds to the extent of $8,000,000, which the instrument was intended to secure. In trust for that purpose, the railroad company conveyed to the Union Trust Company all the lands so granted by congress, including the tract in question, and also the railroad itself to be constructed, with all of its houses and rolling-stock, rights-of-way, franchises, etc. It was agreed that the railroad company should make sales of the lands in accordance with certain regulations for the purpose, not necessary to specify, and that the Trust Company should make title to the purchasers ''to hold in fee simple by full and sufficient deeds.'' There were many elaborate provisions in the deed of trust to effectuate the principal object, but they have no bearing on this case.

On the eleventh day of January, 1876, J. J. Vickers purchased through Essex, its attorney in fact, from the St. Louis, Iron Mountain & Southern Railroad Company, with which the Cairo & Fulton Co. had then become consolidated, a portion of the land in controversy, to-wit: The west half of the northeast quarter, section eight, township twelve south, of range twenty-three west. He paid in cash to the Union Trust Company thirty dollars and executed four notes to the order of said Trust Company for $112.50 each, payable with interest respectively on the first days of Janu-

.ary 1877, '78, '79, and '80. The railroad company executed to him a bond for title to be made by execution of a deed upon the payment of the notes. The Trust Company .also, on its part, acknowledged the receipt of the cash and notes, and covenanted on payment to execute a release of the land. Vickers, by written assignment, endorsed and acknowledged on the instrument, conveyed all his interest to defendant Norman on the twenty-fourth of April, 1876, for the expressed consideration of one hundred dollars, and directed the Trust Company to convey to Norman on payment of the notes.

Norman, in his answer, denied the title of Andrews' estate in the whole quarter section, and set up, in defense, the title thus derived from the Cairo & Fulton R. R. through the Trust Company and Vickers. Pending the suit Norman died and it was revived.

The case was submitted to the court upon the pleadings and agreed statement of facts, by which it was admitted: that the deed of trust to Brayman et al, was duly executed; the order of the executive committee was made and approved by the directory; and that the substituted trustees conveyed to Andrews by deed duly recorded, and that Andrews went into possession under the deed.

Admitting also the execution of the deed of trust to the Union Trust Company: That the lands were a part of the congressional grant and embraced in both trusts; the consolidation of the railroad companies, and that the St. Louis & Iron Mountain road became entitled to all the rights of the former; the sale to Vickers, as set forth above; the assignment to defendant, and that defendent was placed in possession under the assignment.

Also admitting that the deed to Union Trust Company, had been duly recorded and the deed to Brayman et al had not. Further, that no part of the Cairo & Fulton R. R. *was built* or in progress of construction until the year

1870. Further, that Vickers had notice in fact of Andrews' claim when he purchased, but that defendant Norman had no actual notice of plaintiff's claim, or of the deed of trust to Brayman and others, and that Norman had for two years occupied and cultivated the lands sued for.

The court declared the law upon the facts, exhibits and pleadings to be, that the title to the land by virtue of the sale to Andrews, became vested in him, when it afterwards became perfect in the railroad company, by the completion of the road, and that the company would be estopped from denying the efficacy of any acts done by Wait, Ashley and Woodruff, in accordance with the terms of the powers conferred, which estoppel would extend to all claiming subsequently under the company. That by virtue of the recording of Andrews' deed, Norman and those under whom he claimed, had notice of Andrews' title, and that defendant having occupied for two years was liable for use and occupation.

The court refused, for the defendant, to declare that the plaintiff had shown no cause of action ; that for want of the due recording of the deed to Brayman and others, the full title passed to Union Trust Company ; that the railroad company had no right to dispose of the lands when the sale was made to Andrews ; that the second set of trustees were never legally appointed, nor empowered to sell the lands.

Judgment for plaintiff for the whole quarter section and two hundred dollars damages.

Exceptions were duly saved by proper bill, and a motion for a new trial being refused, defendant appealed.

By *sec. 4, ch. XXXI, of the Revised Statutes of 1838,* (*Gantt's Dig.*, *sec. 832*): " If any person shall convey any real estate by deed purporting to convey the same in fee simple, absolute or any less estate ; and shall not at the time of said conveyance, have the legal estate in such lands, but shall afterward acquire the same, the legal or equitable

estate afterward acquired shall immediately pass to the grantee ; and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at time of the conveyance.''

In the case of *Locke v. Brogan and Thorn, 5 Ark.*, 693, there was a very strong application of this act. Chester Ashley made a deed to Woodruff of lands to which he did not himself obtain title, until nearly fourteen years afterwards. Meanwhile Woodruff had sold to others. It was held that Ashley's after-acquired title would take the line of the previous conveyances and vest in the heirs of the last vendee.

So in *Watkins & Trapnell v. Wassell, 15 Ark., 73*, there was another very vigorous effect given to the act. Although, by statute, judgments are liens on after-acquired lands, yet it was held that if the debtor had previously conveyed the lands before he acquired title, and before the judgment, the after-acquired title eluded the judgment lien and vested in the grantee. In other words, unless there be intervening rights to be protected, after-acquired lands pass in all respects as if the same title had been in the grantor at the time of conveyance.

We can conceive no reason why this should not apply to corporations as well as individuals. It is the law of our State, whatever may be the decisions of other states upon common law principles. Equitable estoppels stand upon their own peculiar grounds. The effect of our statute is at law, as well as in equity.

The railroad company, at the time of the sale by its appointed trustees, Woodruff and others, to Andrews, had not completed any of the road and had no right to sell. Nevertheless it did afterwards complete the road, and all the lands, including these, became vested in it, which had been granted by congress. Neither the United States nor the State claimed the reversion, nor objected, and the sale

vested title in Andrews against all the world, except those who by acquiring a better title and right might have grounds to object.

The Union Trust Company, under which defendant claims half the lands sued for, did acquire such better right, for the benefit of its *cestuis que trust* the bond holders in the mortgage. There is no proof that it, or the bond holders whom it represented, had any notice of the unrecorded deed of trust to Brayman and others, and it was under that deed the new trustees had acted. The deed to Andrews was recorded but the trust deed giving the power to sell to Andrews was not. Nor was there any record of the action of the executive committee or the board of directory affirming it, showing an authority in Wait, Woodruff and Ashley to sell. Whether they derived their power from the trust deed or from the directory, in either view there was nothing in their deed, signed and sealed by them individually, to give notice of an alienation by the Cairo & Fulton Railroad Co. *Powers*, by which deeds are executed, must be recorded also. *Gantt's Dig.*, sec. *851, 852*.

We do not mean to be understood as holding, here and now, that the Trust Company would have been bound, even by actual or recorded notice of this premature sale to Andrews in direct violation of the law of congress. It is not necessary to this case. Suffice it to say that there was no notice, and the land became subject to sale by the Trust Company, in accordance with the terms of the trust. Notice by Vickers of Andrews' former purchase is unimportant. If it were absolved from any burden resulting from notice, in the hands of the Trust Company, the latter might sell to a purchaser with notice ; otherwise, the value of the property as security would be destroyed. It follows, therefore, that Norman had the better title to the west half of the northeast quarter of section eight in said township and range.

With regard to the east half he shows no better title than Andrews' estate, which is *prima facie* good, unless the land be claimed under authority of the Trust Company or some superior title.

The court erred in its declarations, and in its application of the law. The judgment on the case as made should have been for the plaintiff, only for the east half of the quarter section and such damages as might have been shown for the detention of that.

Reverse the judgment and remand the cause for further proceedings in accordance with law and this opinion.