2. Execu-<br/>tory gift not<br/>enforcible.

---

## BROWN v. BOCQUIN.

### Opinion delivered December 24, 1892.

1. *Adverse possession—Facts held not to constitute.*
   Fitful acts of ownership of land situated in a city, such as permitting persons on two occasions to use part of the land as a lemonade stand for a day at a time, and causing some paving stones for a sidewalk to be deposited on the land, are not sufficient, in connection with the payment of taxes and the open claim of title, to constitute adverse possession of the land as against the owner of the legal title.

2. *When adverse possession begins.*
   Where adverse possession is relied upon to give title, the burden of showing the beginning of such possession is upon the party who relies upon the fact of possession; and where the proof shows that the possession began somewhere between the years 1870 and 1872, it cannot be said to fix the date earlier than the latter part of the year 1871.

3. *Decree quieting title conclusive as to possession.*
   Under the rule of practice in equity that an action to quiet title must be based on possession in the plaintiff, proof that a decree was rendered in such an action in favor of the plaintiff justifies the presumption that the plaintiff was in possession, and concludes the defendant from disputing that fact in a subsequent controversy with the plaintiff.

4. *Purchaser pendente lite concluded by judgment.*
   Where, pending a suit to remove a cloud upon title, a mortgage of the land is executed by the defendant, the mortgagee will be bound by a decree subsequently rendered against the defendant.

| | |
|---|---|
| 57 | 97 |
| 68 | 554 |
| 57 | 97 |
| 75 | 422 |
| 57 | 97 |
| 79 | 112 |
| 81 | 261 |
| 57 | 97 |
| 84 | 214 |
| | 97 |
| 57 | 211 |
| 87 | |

5. *Partition—When not binding—Election.*

One who wrongfully claimed an undivided sixth interest in a tract of unoccupied land received from the owners of the other five sixths a deed conveying a sixth part of the land in severalty. The true owner of the undivided sixth interest did not assent to such partition, but elected to claim an undivided sixth interest in the entire tract. *Held*, that a purchaser of such interest from the true owner cannot, after the lapse of twenty years, elect to hold the tract so conveyed in severalty, to the prejudice of an innocent purchaser, but will be entitled to recover only an undivided sixth interest therein.

6. *Evidence held to establish adverse possession.*

Evidence that a tract of land was fenced by one who claimed to own it, that a well was dug by her on it, that a brick-making plant was erected, and that part of the land was used for obtaining clay, is sufficient to establish adverse possession against the owner of the paper title.

7. *When possession of co-tenant adverse.*

Where a co-tenant takes possession of the estate in common, under a deed which purports to convey the entire estate, and expressly repudiates the claim of title of her tenant in common, her possession is adverse, and sets the statute running in her favor.

8. *What acts do not constitute constructive possession.*

Actual possession of one tract of land, under a deed conveying three tracts, is not constructive possession of the other two tracts, where the latter are not contiguous to the former nor in apparent and actual use in connection with it.

Appeal from Sebastian Circuit Court in Chancery, Fort Smith District.

EDGAR E. BRYANT, Judge.

*Jos. M. Hill* for appellant.

1. Appellant's title to one-sixth is paramount to appellee's. The Meador judgment was a lien upon the sixth interest, and the marshal's deed related back, thus cutting off the alienation by Latham to Stryker, and by Woods Rogers to Latham.

2. Appellant was entitled to be substituted and subrogated to the interest of Stryker, and have title not only to one-sixth but to all the property in suit.

Stryker had but a colorable title, and one subsequently by suit vested in Hershey. Tiedeman on Real Prop. sec. 265; 1 Wash. R. P. (4th ed.) top p. 687, sec. 15; Freeman on Par. & Co-Ten. secs. 409, 531.

3. Appellee cannot set up her title as to one-sixth of the property because (1) she was a purchaser with notice, as were her grantors; (2) Stryker is estopped by *res judicata*, and appellee was a purchaser *pendente lite*, and likewise estopped and precluded by the judgment. The judgment in the Federal court was a lien upon the land. 12 Ark. 218; 12 Wall. 150; Black on Judg. sec. 413. A purchaser during the life of a judgment lien acquires no greater right than the judgment debtor, and takes in subordination to the lien. 12 Ark. 421; 15 *id*. 73; 13 Pet. 464. Every one takes notice of recorded instruments and judgments. 30 Ark. 407; 54 *id*. 273; Wade on Notice, secs. 46, 97, 307 *et seq.;* Black on Judg. sec. 607; 50 Ark. 217. A purchaser *pendente lite* is bound by the decree; he acquires the interest of the defendant subject to the suit. 12 Ark. 421; 15 *id*. 331; 29 *id*. 358; 16 *id*. 168; 30 *id*. 249; Wade on notice, secs. 339, 342, 344, 347, 348, 392a. The conveyance to Birnie's administrators was a *purchase* by them and not an assignment of the mortgage. The conveyance was not a merger or assignment but a satisfaction of the mortgage and a sale of the property, and 45 Ark. 376 does not apply. Jones on Mortg. secs. 848, 855, 856 and notes, 951. When partition is had, the parties are considered purchasers for value. 25 Mich. 38; Wasb. Real Prop. (4th ed.) 432.

4. There is no such adverse possession as to give title. When a deed conveys two separate and distinct parcels of land, actual occupation of one does not give constructive possession of the other. 28 Ga. 123; Tied. Real Prop. sec. 697; 22 Pac. Rep. 1052; 30 Cal. 630. Hershey was co-tenant with appellee. Holding by one

tenant in common is holding for all, until ouster.   More evidence is required to establish adverse possession by a tenant in common than a stranger.   20 Ark. 359; *ib.* 547; 24 *id.* 371; 27 *id.* 527; 42 *id.* 289; Busw. on Lim. & Adv. Pos. secs. 296–7.   Neither conveyance, color of title nor payment of taxes, nor all combined, can give title to land, under the statute of limitations.   There must be adverse possession for the requisite time.   45 Ark. 89.   It must be continuous for the full period. 48 Ark. 277; 49 *id.* 266.   The burden is on the party claiming adverse possession; the presumption is that possession follows the legal title.   Buswell, Lim. & Ad. Pos. sec. 236.   The bill should not have been maintained because the land was not occupied by plaintiff at the time suit was brought.   Her title was not an equitable one, and the land was not "wild and unimproved."   23 Ark. 747; 37 *id.* 644; 43 *id.* 28; 44 *id.* 436; 51 *id.* 235, 259; 21 *id.* 9.

5.   Appellee has not acquired title to blocks 81 and 82 by adverse possession.   The possession must be actual, hostile, peaceable, continuous, open and notorious. It must be adverse and exclusive.   49 Ark. 66; 34 *id.* 598; 22 *id.* 84; 27 *id.* 92; 48 *id.* 312; 22 *id.* 466.   Occupancy of one tract is not occupancy of another separate tract.   22 Pac. Rep. 1052; 30 Cal. 630; 3 Wash. R. P. top p. 156 (4th ed.); Tiedeman, R. P. sec. 696.   The institution of a suit arrests the statute.   13 Ark. 269; *ib.* 276; 47 *id.* 121; 10 *id.* 479; 23 *id.* 510; 12 *id.* 94; 27 *id.* 343; 33 *id.* 421; 21 *id.* 9; 23 *id.* 336; 24 *id.* 371.   Constructive adverse possession only applies to "wild and unimproved" land, and to land not susceptible of "*pedis possessio.*"   As to all other, there must be *actual* possession.   49 Ark. 266; 48 *id.* 312; 27 *id.* 77; 21 *id.* 9; 68 Pa. St. 189; Wood on Lim. secs. 257–8–9, 262; Busw. on Lim. & Ad. Pos. secs. 252–6–8, 268; 3 Washb. Real Pr. (4th ed.), top 128, 134, 135, 136, 137, 138, 139, 140,

141, 142; Tiedeman, Real Prop. secs. 695–6. Disconnected and occasional acts are wholly insufficient. 4 S. W. Rep. 571; 16 *id.* 692; 12 S. E. Rep. 379; 12 S. W. Rep. 1068; 21 N. E. Rep. 934; 8 S. W. Rep. 10.

*L. P. Sandels* for appellee.

1. A mortgagee, to the extent of his claim, is a *bona fide* purchaser, and is entitled to notice of every assault upon his title. He is a necessary party to every action affecting his title. 49 Ark. 214; 11 Pa. St. 282; Jones, Mortg. secs. 458, 709, 710; 19 How. 113. The purchaser under foreclosure takes the title of mortgagor and mortgagee. His title relates back to the date of the mortgage, and no transfer or encumbrance subsequent thereto, and no action against the mortgagor to which the mortgagee was not a party, can affect his title. Jones, Mortg. secs. 1654, 1877; 31 Pa. St. 120; 15 Ark. 244; 2 Ohio St. 339. Where the mortgagee, or one holding under him, acquires the title of the mortgagor by purchase, it is tantamount to a foreclosure and sale under the mortgage. 45 Me. 412. See also 41 Fed. Rep. 728; 43 Ia. 512; 16 N. Y. 575; 140 Mass. 49.

2. The actual possession of Stryker and his grantees, under color of title for more than ten years, and the actual and continued possession by Mrs. Bocquin with notorious acts of ownership, constitute title. 31 Conn. 530; 18 Tex. 850; 6 Pa. St. 355; Meigs, 613.

3. Stryker's possession and the acts of Mrs. Bocquin are sufficient to prove title. 21 Ark. 16; 11 Pet. 41; 10 *id.* 412; 2 Dana, 271; 3 Me. 315; 34 Ia. 564; 25 Mo. 19; 24 Ark. 388; 27 *id.* 165; 41 *id.* 304. But, being in constructive possession of the whole, her actual use and possession of part was an adverse occupancy of all the land covered by the deed. 10 Pet. 412; 11 *id.* 41; Busw. Lim. sec. 254 *et seq.;* Wood, Lim. sec. 259 *et seq.*

4. Even if Stryker was a co-tenant of Hershey, he claimed adversely and conveyed the whole to his grantee who enters into possession and claims the exclusive title, and denies Hershey's claim. This is an ouster, and subsequent possession is certainly adverse    Buswell, Lim. sec. 300; 3 Metc. 91; 1 Me. 89; 51 Ia. 354; Wood, Lim. sec. 266; 13 B. Mon., 436; 6 Metc. 360; 63 Cal. 586; 5 Cow. 483.

5. As to facts held to constitute possession adverse, and as to possession of one of two separate tracts held under same deed, see 54 Mo. 315; Sedg. & Wait, Tr. Title to Land, 586; 64 Ga. 156; 52 *id*. 527; 87 Ill. 148; 49 Mo. 447; *ib* 397.

COCKRILL, C. J. This is a suit by Mrs. Bocquin against Brown, with cross-complaint by Brown to quiet title to land. The parties deraign title from a common source. Each claims to have acquired the undivided interest of Woods Rogers, who was one of six heirs of John Rogers.

Mrs. Bocquin's claim of title is as follows : Woods Rogers conveyed his undivided interest in his deceased father's estate to Latham, and the latter conveyed the same interest to Stryker ; the other heirs of John Rogers, treating Stryker as the owner of Woods Rogers' interest in the estate held in common by them, made partition by mutual conveyances ; they conveyed to Stryker in severalty one-sixth of the estate, Stryker executing to them conveyances of the interest claimed by him in the shares allotted to each. Stryker conveyed the land in suit— which is a part of the share allotted to him in the partition—to Birnie ; it descended to his heirs and was set aside in partition between them to Mrs. Bocquin.

Brown's claim of title is as follows : After Woods Rogers conveyed his undivided interest to Latham, but before Latham's conveyance to Stryker, a judgment for the recovery of money was rendered against Latham and

became a lien on his interest in the land ; after Latham's conveyance to Stryker, but while the lien of the judgment was subsisting, Latham's interest in the lands was levied upon and sold to satisfy the judgment, and Hershey purchased and obtained a deed in pursuance of the execution sale. Brown has succeeded to Hershey's title.

These facts are alleged in Mrs. Bocquin's complaint, and counsel have not directed our attention to any allegation or proof that qualifies or breaks their force. As Hershey's title related to the date of the judgment, which is anterior to Latham's conveyance to Stryker, it follows that Brown, who claims under Hershey, has the paper title to an undivided sixth interest of the lands in suit. That was the opinion of the trial court.

But the complaint alleged, and the court found the fact to be, that Mrs. Bocquin had acquired title to Hershey's interest by seven years adverse possession. The facts upon that branch of the case are as follows : There are three tracts of land in controversy. One is a tract of about seven acres lying beyond the corporate limits of the city of Fort Smith ; the others are two blocks of ground lying contiguous to each other in that city and remote from the other tract. The first actual possession of any of the lands, developed by the evidence, was by Stryker. Soon after Latham's conveyance to him, he put a rail fence around a tract of land which embraced the two blocks now in the city limits. It had not been laid off into blocks then. ` The fence was erected between 1870 and 1872. The time cannot be more definitely ascertained. The complaint, according to the abstracts, contained the following allegations : "On May 2, 1878, Hershey commenced suit against John Stryker and Rogers' heirs to have ascertained and declared his interest in and to lands in his complaint described, among others the land in controversy, and on July 12, 1880, obtained decree for one-sixth interest." The decree is referred

to as one quieting the title of Hershey to a sixth interest in the land.

The answer concedes the truth of these allegations. In 1874, Stryker had mortgaged these lands to Birnie; Birnie was not made a party to Hershey's suit, but after it was instituted he foreclosed his mortgage, and, having died before the decree was executed, his administrators acquired Stryker's title by conveyance from Stryker in execution of the decree in the fall of 1879 while Hershey's suit was pending. The lands were partitioned among Birnie's heirs in the same year.

1. As to adverse possession.

Bocquin found the fence erected by Stryker in a dilapidated condition soon after the lands were set aside to his wife in the partition among Birnie's heirs, and in the spring of 1880 he removed it. Since then there has been no actual occupation of these blocks by any one recognizing the Bocquin title. They have been assessed to, and the taxes have been paid by, Mrs. Bocquin since 1880, and she has all the while claimed the title. Hershey knew of her claim. She has also exercised ownership by permitting persons on two occasions to use one of the blocks as a lemonade stand for a day at a time, and, about two years before the suit was instituted, caused some paving stones for a sidewalk to be deposited on one of the blocks.

The acts manifesting possession by Mrs. Bocquin were clearly not sufficient to show an actual possession by her of any part of these premises for a period of seven years. The proof amounts practically to nothing except the open claim of title and the payment of taxes. But payment of taxes and the assertion of the exclusive right to lands do not constitute possession or disseize the holder of the true title. "A claim of possession without the fact agreeing therewith is not to be recognized by law as productive of right." *Sharp* v. *Johnson*, 22 Ark. 84.

The fitful acts of ownership above detailed, in connection with the payment of taxes and claim of title, were not of such notoriety as to put the owner upon his guard against a continuous *disseizin* and adverse possession for seven years. The chancellor so held. But he found and declared that Stryker's possession was adverse for seven years, and that it enured to Mrs. Bocquin's benefit.

The testimony that Stryker took possession of the land by enclosing it between the years 1870 and 1872 leaves it uncertain at what time within that period possession was taken. But the burden of showing the beginning of the possession was upon the plaintiff who relied upon the fact of possession. The proof, therefore, cannot be said to fix the date earlier than the latter half of the year 1871. *Grosholz* v. *Newman*, 21 Wall. 481.    2. When adverse possession begins.

• But that was within seven years of Hershey's suit against Stryker to declare and quiet his title. Stryker was not then the owner of the Hershey interest in the land. He had previously mortgaged the land to Birnie, who, afterwards and while Hershey's suit was pending, foreclosed his mortgage. Stryker conveyed the lands to Birnie's administrators in satisfaction of the decree. Afterwards a decree quieting Hershey's title was entered against Stryker. Neither the pleading nor the decree in Hershey's suit are set out in the record. The facts in relation to them are found in the allegations of Bocquin's complaint; they are admitted in Brown's answer, and are now relied upon by him as establishing the fact that Stryker did not maintain adverse possession for seven years. There is no direct proof of Stryker's possession of the land when Hershey's suit was brought. His possession rests upon the inference to be drawn from the fact that the fence he built in 1871 was standing when he conveyed to Birnie's administrators.    3. Conclusiveness of decree quieting title.

If Hershey's suit had been an action of ejectment against Stryker, begun before the bar had attached and pressed to a successful termination, those facts would easily end the claim of Stryker's adverse possession, for the statute bar could not run to fruition in favor of Stryker while Hershey was prosecuting against him a successful suit for the possession. But Hershey's suit was to quiet title, and was not in the form of an action for possession. The fact of possession was, however, at issue. The action to quiet title proceeds upon the fact of the plaintiff's possession when the suit is commenced, and the complaint always tenders that issue. A decree in favor of the plaintiff necessarily affirms the existence of the fact, whether the defendant has seen fit to litigate it or not, and for that reason it thereafter concludes the defendant from controverting the truth of the allegation in a controversy between him and the plaintiff. 1 Freeman, Judgments, sec. 249.

As the facts in relation to the Hershey suit and decree rest upon the allegations of the plaintiff's complaint, without a suggestion that the complaint was not in the common form of complaints in such suits, we entertain the presumption of *omnia rite acta* in favor of the judgment, and therefore that the court found all the facts necessary to the proper rendition thereof. As between Brown, Hershey's successor in title, and those claiming through Stryker by conveyance executed after the institution of Hershey's suit, the decree would be proof that Hershey was in possession of the land in suit when he commenced his action against Stryker, and would show therefore that his title had not been extinguished by adverse possession.

4. Purchase pending suit concluded by judgment.

But it is argued that the title of Birnie, the plaintiff's predecessor in title, relates back to his mortgage which antedates Hershey's suit; that Birnie was a

stranger to that suit, and therefore that the judgment therein proves nothing against his title. The argument is misleading.

The purchase by Birnie's administrators was tantamount to a sale and purchase under decree of foreclosure. The title thus acquired related back to the time of the execution of the mortgage, and no intervening decree, rendered in a cause to which the mortgagee was not a party, could affect that title. But the title by relation can be no greater than that covered by the mortgage. It can be no better than if the mortgage had been originally an absolute conveyance. In other words, the title by relation can be no better than the title of the grantor. If the grantor, whether by absolute deed or mortgage, acquires title subsequent to his conveyance, it enures to the benefit of the grantee. *Kline v. Ragland*, 47 Ark. 111.

But it cannot enure to the benefit of the grantee until it has been acquired by the grantor. There is no magic in the doctrine of title by relation to confer upon the grantee a title which the grantor never possessed. Therefore, until Stryker had acquired title, there could be none to enure to Birnie's estate, by relation or otherwise. The prime question to be determined in this case is, not whether an after acquired title by the mortgagor shall relate back to the date of the mortgage, but whether the mortgagor has acquired a new title. He had acquired none when Hershey sued him, because seven years had not elapsed since the beginning of his adverse possession. As Birnie's claim could not antedate that of his grantor from whom he derived his right, it follows that the claim to Hershey's one-sixth interest, which his grantee now seeks to enforce, accrued after the suit was brought. But in that event he is in no better attitude than his grantor, who was defendant in Hershey's suit; for one who acquires a right *pendente lite* is bound by the judgment rendered in the cause. As against Hershey's

sixth interest the mortgage stands as though Stryker had executed it at the time the asserted right would have accrued by virtue of Stryker's possession. The decree against Stryker is therefore proof against his successor in title.

The doctrine of relation could have no place in this cause for the further reason that that fiction is never allowed to operate where it would work an unconscionable injury to an innocent party. *Jones* v. *Green*, 41 Ark. 363, 370; 1 Jones on Mortgages, sec. 679.

Its effect in this case would be to allow Hershey's title to be extinguished by adverse possession while he is litigating the question of title with the only party who is claiming possession, although his suit results in a judgment which precludes that party from asserting title, whether he (the defendant) was in fact in or out of possession while the suit was pending. Hershey's judgment has that effect, because a judgment for the plaintiff in accordance with the prayer of his complaint, rendered in a suit calling upon the defendant to show his title and to declare the plaintiff the owner in fee of the land upon a legal title asserted in himself, cuts off every possible interest in the defendant. 1 Freeman on Judgments, sec. 309.

The complaint shows that that was the object of Hershey's suit. It was not a suit to validate or invalidate a particular conveyance, as in *Buckingham* v. *Hallett*, 24 Ark. 519; nor was Birnie's attitude that of a stranger who was himself in possession, claiming title while others were litigating their titles, as in *Weed Sewing Machine Co.* v. *Baker*, 1 McCrary, 579, or *Cunningham* v. *Brumback*, 23 Ark. 336. There is no foundation for the plaintiff's assertion of title to Hershey's one-sixth undivided interest.

5. When partition not binding.

Brown contends that he is the owner, not of a sixth interest only, but of the whole of these two blocks,

because, he says, he owns Woods Rogers' interest in his deceased father's lands, and that interest was set aside to Stryker in partition—these lands being a part of the share allotted to Stryker.

If Hershey and the five aggrieved heirs of John Rogers had joined in a suit to set aside the conveyance of the lands allotted to Stryker as Woods Rogers' interest in the estate, in order to vest the title to that share in Hershey and so confirm the partition between the true owners, it is difficult to see how Stryker could have resisted the suit. But the partition between the five Rogers heirs and Stryker was not binding on Hershey. He acquired no new title by it. He remained the owner of a sixth undivided interest of the whole.

Stryker was the apparent owner of the five-sixth interest conveyed to him by the five heirs, and if Hershey had the election, without the assent of those heirs, to compel a conveyance from Stryker, he should have exercised it promptly, and his successor in title cannot now, after a lapse of twenty years, resort to that remedy, to the prejudice of a purchaser for value who is not shown to have had notice of his claim. That was Birnie's attitude. *Fargason* v. *Edrington*, 49 Ark. 207.

Moreover, the abstract of Brown's answer contains this allegation: "That, in a subsequent partial partition between said Hershey and Roger's heirs, this property (that described in the complaint) was not partitioned." From that we infer that Hershey elected to stand upon his legal title to a one-sixth interest in the whole, and recovered a part of it from the heirs of Rogers. Having made his election, he must abide by it. His successor in title can now recover a sixth undivided interest in the two blocks of ground described in the complaint and cross-complaint—no more.

As to the seven-acre tract, the proof shows adverse possession by Mrs. Bocquin for seven years. That is in

6. When possession adverse.

accordance with the chancellor's finding. The reporter may set forth the facts upon which that title is adjudged.*

7. Co-tenant's possession is adverse when.

Brown argues that Mrs. Bocquin's possession should not be held adverse, because she was his tenant in common. But Mrs. Bocquin had never recognized that relationship ; she expressly repudiated Hershey's claim of title, and took possession under a deed purporting to convey the entire estate to her. That was sufficient to disseize Hershey, who was the owner of an undivided interest, and set the statute running in her favor. *Ashley* v. *Rector*, 20 Ark. 359. Hershey's vendee occupied no more favorable position than Hershey had.

8. As to constructive possession.

The seven-acre tract and the two blocks of ground in the city were conveyed by Stryker to Birnie's

---

*The testimony relating to the possession of the seven-acre tract is as follows :

C. F. Bocquin, plaintiff's husband, testified as follows : "I moved my brick plant on the seven-acre tract in 1879 or 1880. I dug a well and built some fence on the seven-acre property. James H. Reed was engaged with me then in making brick. I occupied the seven-acre tract five or six years. I still have some machinery on that ground. I occupied the ground as natural agent of my wife. I have always done all of her business. In taking possession of this property, removing the fence from it, moving my brickyard on it, digging the well, and building fence, I claimed and controlled the property as my wife's. * * * I took actual possession of the seven-acre tract in 1879. At that time the land was vacant. The brick plant was moved on the land in the spring of 1880. The fencing was done about the same time. We occupied it until about two years ago as a brickyard. I moved my brick plant to another place, and the fencing was carried off. My sheds still remain on the ground." James H. Reed testified as follows : "Prior to and during 1880 I was partner with Bocquin & Reutzel in brickmaking. In spring of 1880, we moved our plant on seven-acre tract which Mr. Bocquin claimed was his wife's. We remained on this tract three or four years. I left the firm then, and Bocquin & Reutzel continued the business on this tract. I never knew of any one besides Mrs. Bocquin claiming this property. * * * We built a fence around the seven-acre tract, and dug a well. There is still some machinery on the land. We used two or three acres of the seven-acre tract in getting dirt. We fenced the entire tract. I paid Mr. Bocquin rent for the ground."

administrators by a single deed, and Mrs. Bocquin
derived title in like manner. Her final contention is
that her actual possession of the seven-acre tract
drew to it the constructive possession of the two city
blocks, and that she thereby acquired title by adverse
possession of the two blocks as well as the seven-acre
tract.

The general rule is that the law gives to an adverse
claimant in possession of a part of lands, claimed under
color of title, constructive possession of the whole. The
rule has been subjected to several qualifications. One
of these, which appears to be without exception in
authority, is that the tracts must be contiguous, or else
the one in constructive possession must be in apparent
and actual use in connection with that which is actually
occupied. In the latter case, it may be more proper to
say that both tracts are actually occupied by the dis-
seizor—the occupancy of one under color of title of both
dispensing with strict proof as to the possession of the
other. But there was no use whatever made of the town
property in connection with the seven-acre tract. Con-
sequently, possession of the seven-acre tract did not dis-
place Hershey's seisin and constructive possession of the
two blocks. Tyler on Ejectment, 900 ; Tiedeman, Real
Prop. sec. 696 ; *Barber* v. *Shaffer*, 76 Ga. 285; *Morris*
v. *McClary*, 43 Minn. 346; *Thompson* v. *Burhans*, 79 N.
Y. 93 ; *Hicklin* v. *McClear*, 22 Pac. Rep. 1057.

There were other facts affecting the title of both
parties set out in the pleadings. But counsel have not
set out the proof in reference to them and have not in-
sisted upon them here. We conclude they were inten-
tionally abandoned, and have not considered them. In
that view the decree as to Lizzie Humphrey, who claimed
a part of the town property, should be affirmed.

The decree as to the seven-acre tract is affirmed ; as
to the other land, it will be reversed, and the cause

remanded with directions to enter a decree quieting Mrs. Bocquin's title as to five-sixths and Brown's as to one-sixth of what remains after setting aside the tract awarded Lizzie Humphrey.

It is so ordered.